# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALISON T. MAGERA | CIVIL ACTION NO. 3:08-CV-565 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | |
| Defendant. | |

## MEMORANDUM

Presently before the Court are the Motion for Summary Judgment of Defendant Lincoln National Life Insurance Company ("Lincoln") and Plaintiff Alison T. Magera's ("Magera") Cross-Motion for Summary Judgment. (Docs. 38, 41.) For the reasons provided below, Defendant's motion will be granted and Plaintiff's motion will be denied. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## BACKGROUND

**1. FACTUAL BACKGROUND**

From June 19, 1999 through December 9, 2003, Plaintiff worked as a pharmaceutical sales representative for Aventis Pastuer, Inc. ("Aventis") (Doc. 46, ¶ 10.) This occupation was primarily sedentary and required some light grasping, finger dexterity, occasional neck twisting, the ability to look down, interpersonal relationship skills, and some exposure to stressful situations. (Admin. Rec. 0465-0466.) Plaintiff's last day of work was December 9, 2003; the following day Plaintiff's disability for fibromyalgia ("FM") and chronic fatigue

syndrome ("CFS") began. (Doc. 40, ¶ 12.)

When Plaintiff's disability began, she was covered by a long-term disability ("LTD") plan, sponsored by Aventis, who had delegated discretionary authority to Lincoln to determine eligibility for Aventis plan benefits. (Doc. 40, ¶ 3.) The LTD plan contained the following language that is relevant to this matter:

> Totally Disabled and Total Disability mean during the Elimination Period and the next 36 months because of an Injury or Sickness You meet all of the following:
> (a) You are unable to do the Material and Substantial Duties of Your Occupation; and
> (b) You are receiving Appropriate Evaluation and Treatment from a Physician for that Injury or Sickness; and
> (c) Your Work Earnings are less than 20% of Your Indexed pre-Disability Monthly Earnings.
>
> The definition changes 36 months after the end of the Elimination Period. From that point on, Totally Disabled and Total Disability mean because of an Injury or Sickness, all of the following are true:
> (a) You are unable to do the Material and Substantial Duties of any occupation for which You are or may become reasonably qualified by education, training, or experience; and
> (b) You are receiving Appropriate Evaluation and treatment from a Physician for that Injury or Sickness; and
> (c) Your Work Earnings are less than 20% of your Indexed Pre-Disability Monthly Earnings.

(Admin. Rec. 0065.) For purposes of this LTD plan, "Own Occupation" was defined as "the duties that You regularly performed for which you were covered under this Policy immediately prior to the date Your Disability began. The occupation may involve similar duties that could be performed with Your Employer or any other employer." (Admin. Rec. 0062.) The "Elimination Period" was the period of time that an employee must be continuously disabled before LTD benefits became available; under the LTD plan, the Elimination Period was one hundred eighty (180) days. (Admin. Rec. 0059.) "Material and

Substantial Duties" were defined as duties that:

> a) are normally required for the performance of Your own or any occupation; and
> b) cannot be reasonably omitted or modified, except that Canada Life[1] will consider You able to perform the Material and Substantial duties if You are working or have the capability to work 30 hours per week.

(Admin. Rec. 0061.)

Lincoln's literature contains information regarding both FM and CFS, including how they are diagnosed, how they are treated, predicted outcomes for people suffering from these conditions, and the expected length of disability. (Admin. Rec. 0311-0322.) For FM, there is no set criteria for a diagnosis, but a complete physical examination is required for a diagnosis of FM, particularly in light of the lack of diagnostic tests to detect the condition. (Admin. Rec. 0312-0313). FM is a chronic disorder that can only be alleviated, not cured, and therefore the goal is to minimize disability. (Admin Rec. 0314.) Although some individuals are permanently unable to return to their previous occupations, the pain from FM can usually be improved gradually over time. (Admin. Rec. 0315). The first type of specialist listed as appropriate for FM are rheumatologists and the maximum expected length of disability for sedentary work is seven (7) days. (Admin. Rec. 0315-0316.) Much of the information regarding treatment, outcome, and expected disability is the same for CFS. (Admin. Rec. 0321-0322.)

Plaintiff's Elimination Period was set to expire on June 8, 2004. (Doc. 40, ¶ 13.) By letter dated September 21, 2004, Ms. Magera's application for LTD benefits was denied because she was not continuously disabled throughout the Elimination Period, as required

---

[1] Canada Life Assurance Company is Lincoln's predecessor company. (Doc. 42, ¶ 3.)

3

by the LTD plan. (Admin. Rec. 0333-0334.) This decision was based primarily on a May 4, 2004 report from Ms. Magera's Rheumatologist, Dr. Charles L. Ludivico of East Penn Rheumatology Associates, that stated that Plaintiff was "completely better after 8 weeks of physiotherapy" and "interested in going back to work to two 4 [hour] shifts." (Admin. Rec. 0694.)

Ms. Magera challenged this decision, and Lincoln ultimately approved her claim for disability benefits and paid all benefits in arrears on August 26, 2005, following a review of Plaintiff's medical condition and medical records. (Doc. 40, ¶ 17-18.) On October 31, 2005, Defendant informed Lincoln that she might be a "good candidate" for Social Security Disability Benefits. (Doc. 42, ¶ 46.) The Social Security Administration denied Ms. Magera's application for benefits, but she appealed this decision with the help of a firm that was hired by Lincoln to represent her. (Doc. 42, ¶¶ 49-50.) On April 17, 2007, Administrative Law Judge James Andres determined that Plaintiff's FM and CFS was "so severe that she is unable to perform any work existing in significant numbers in the national economy." (Doc. 42, ¶ 63.) As provided in the policy, Plaintiff refunded eighteen thousand, nine hundred eighty dollars and eighty cents (($19,980.80) as a Social Security offset. (Doc. 42, ¶ 66.)

On July 31, 2006, Lincoln advised Ms. Magera that her LTD benefits had been denied beyond July 7, 2006. (Admin. Rec. 0461.) This decision was heavily based on the Dr. Ludivico's records from March 24, 2006, which stated that he "thought [Plaintiff] could go back to work perhaps it might be wise to start with a part time schedule 4 hours per day for the first 2 weeks and then gradually increase over a period . . . of a month to 8 hours a day." (Admin. Rec. 0479.) According to this report, Ms. Magera "ha[d] less fatigue and more energy and seem[ed] to be able to be focusing and doing some light work for up to 6 to 8

hours." (*Id.*)

Plaintiff formally appealed this denial of benefits on December 13, 2006. (Admin. Rec. 0395-0396.) On May 29, 2007, despite Plaintiff's belief that she was unable to return to work, her appeal was denied because "the medical documentation [did] not support a condition that would render [her] unable to perform [her] own sedentary occupation." (Admin. Rec. 0148-0149.) Between her original denial and the denial of her appeal, Plaintiff treated with Dr. Sylvan Brown at Arthritis & Rheumatology Associates. (Admin. Rec. 0158-0169.) Dr. Brown's records were considered in Plaintiff's first appeal with Lincoln. (Admin. Rec. 0148-0149.) On October 4, 2006, Dr. Brown noted that Plaintiff was "in no distress," that cervical motion was painless, the shoulders were somewhat limited with pain on motion, and that there was "widespread tenderness." (Admin. Rec. 0165-1066.) On November 11, 2006, Plaintiff had a "flare-up" that she felt was "related to a prolonged episode of bronchitis." (Admin. Rec. 0164.) Between December 6, 2006 and April 25, 2007, Plaintiff treated with Dr. Brown five (5) times; significantly, at no time did Dr. Brown say that Ms. Magera's symptoms would preclude her from working in a sedentary occupation, despite varying complaints of pain on the part of the Plaintiff and the understanding that the goal for her treatment was to manage her symptoms in a way that would allow her "to function reasonably well." (Amin. Rec. 0158-1063.)

On July 5, 2007, Plaintiff formally appealed the denial of benefits from the first appeal. (Admin. Rec. 0145-0147.) In that letter, Ms. Magera based her appeal on the fact that a "Federal Court Judge" (presumably the ALJ in her Social Security appeal) found that she was totally disabled, that she had frequent relapses that caused her to go into "complete collapse," she was in excruciating pain, and that she had restricted movement. (*Id.*) Plaintiff

5

stated that she had no further documentation to include in her letter and that Lincoln had "all of the needed information to come to these conclusions already in front of you." (*Id.*)

Upon receipt of the second appeal, Defendants commissioned Elite Physicians, Ltd. to conduct a peer review of Plaintiff's claim. (Doc. 42, ¶ 87.) Among the records provided for review were progress notes from Easton Hospital, Mt. Pocono Care Center, Dr. A. Glantz, Dr. K. Walia, East Penn Rheumatology Associates, Woodlands Healing Research Center, Dr. B. Cohen, Dr. G Ptkaowski, Dr. G. Ross, Dr. K. Aneja, Dr. S. Brown, Pocono Medical Center, and Dr. J. Wolff, as well as various laboratory tests. (Admin. Rec. 0140.) On August 7, 2007, Dr. D. Dennis Payne wrote a report stating that Ms. Magera's diagnosis of FM and CFS were well-supported but that the medical records suggested that Ms. Magera could perform her job as a telemarketer without restrictions or limitations.

Between 2007 and 2009, Defendants regularly referred files to Elite Physicians for "independent, third-party medical opinion[s]." (Doc. 60, Attach. 1.) In 2007, Lincoln referred 246 claims to Elite Physicians, for a total of two hundred sixty-four thousand, one hundred seventy-five dollars ($264,175.00); in 2008 Lincoln referred 119 claims for a total of one hundred thirty-five thousand, one hundred ninety-five dollars ($135,195.00). Through June 12, 2009, Lincoln had referred 18 cases to Elite Physicians for a total of seventeen thousand, seven hundred ninety dollars ($17,790.00) for that year.

On September 28, 2007, Lincoln denied Ms. Magera's second appeal, having "determined that the new information [Plaintiff] submitted failed to alter the previous denial determinations and that the previous determinations were correct." (Admin. Rec. 0136.) In that letter, disability specialist, Cindy Daly noted:

[w]e are not suggesting you have fully recovered from your medical

6

> conditions nor are we suggesting you no longer need medical care. We are, however, indicating that the medical records no longer support that your medical condition is so severe that it would preclude employment as a Telephone Sales Representative. This occupation is sedentary and allows for a change in position as needed for comfort. It does not require strenuous activities or extended periods of standing and walking. Although you continue experiencing symptoms associated with you medical conditions, we fail to find that the conditions are so severe that they would preclude you from performing the main duties of your occupation and therefore no further benefits are payable.

(Admin. Rec. 0137.) Responding to Ms. Magera's suggestion that her favorable Social Security decision should necessarily affect the outcome of her LTD claim with Lincoln, Ms. Daly went on to explain:

> It's important to note that the Social Security Administration renders their decisions based on their review of your medical records contained within their file and their own rules, guidelines, and regulations. Similarly, we render decisions based on the contractual provisions of the policy issue to your employer and the records contained within our file. Our decision is no based on others (sic) determinations, just as theirs would not be based on ours. . . . We reviewed your records to find evidence of the excruciating pain you noted you were experiencing. While pain and tender points are often mentioned, the records fails to reflect the degree of symptoms you are describing.

(Admin. Rec. 0137.)

## 2. PROCEDURAL HISTORY

Plaintiff filed a Complaint in the Court of Common Please of Lackawanna County on March 7, 2008. The Complaint brought one count for breach of contract (Count I) and one count for enforcement of ERISA benefits under 29 U.S.C. § 1132(a)(1)(B) (Count II). On March 27, 2008, Defendant removed this case to federal court. (Doc. 1.) Defendants filed an Answer on July 1, 2008 (Doc. 4), admitting to certain allegations including those included in paragraph 44 of the complaint, which stated that "Defendant fiduciary has discretionary

7

authority to determine the Plaintiff's eligibility for disability benefits under the policy and is also the entity responsible for paying benefits under the policy." Count I of the complaint was dismissed as preempted by ERISA by Joint Stipulation of the parties on July, 10, 2008. (Doc. 9.)

Defendant filed its Motion for Summary Judgment on March 13, 2009. (Doc. 38.) Plaintiff filed her Cross-Motion for Summary Judgment on March 15, 2009. (Doc. 41.) All current motions have been fully briefed and are now ripe for disposition.

## **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL

8

PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## **DISCUSSION**

"ERISA provides 'a panoply of remedial devices' for participants and beneficiaries of benefit plans." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989) (quoting *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)). Under 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by any ERISA-covered plan beneficiary "to recover benefits due to him under the terms of his plan."

However, ERISA does not specify the proper standard of judicial review for challenges to benefit eligibility determinations by plan fiduciaries. *Firestone*, 489 U.S. at 109. Looking to principles of trust law, the Supreme Court in *Firestone* held that actions under § 1132(a)(1)(B) should be reviewed under a *de novo* standard, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id*. at 115. However, the Court cautioned that any fiduciary who is acting under a conflict of interest must have that conflict weighed in determining whether there has been an abuse of discretion. *Id.*

The Court cleared up some lingering confusion over the *Firestone* opinion almost twenty years later in *Metropolitan Life Insurance Company v. Glenn*, 128 S. Ct. 2343 (2008). In that case, the plaintiff was diagnosed with a heart condition[2] and met the initial standard for receiving twenty-four months of benefits through her LTD plan, which was handled by Metlife as an administrator for the plaintiff's employer, Sears, Roebuck & Company.[3] *Id.* at 2346. MetLife also directed the plaintiff to a law firm that helped her win a favorable award from an ALJ who found that the plaintiff's illness prevented her "not only from performing her own job but also from performing any jobs . . . existing in significant numbers in the national economy." *Id.* After twenty-four months, the plaintiff failed to meet the stricter standard that required her to prove that she could not perform any job for which she was reasonably qualified to receive continued benefits; MetLife found that the plaintiff was capable of

---

[2] The plaintiff was diagnosed with severe dilated cardiomyopathy, a disease "that causes the heart to become enlarged and, for that reason, to pump inadequately." *Glenn v. MetLife*, 461 F.3d 660, 662 (6th Cir. 2006).

[3] In *MetLife*, the plaintiff's final position with Sears was as a sales manager, which required sitting up to 20 percent of the day, "and some climbing, reaching, stooping, and lifting." *Glenn v. MetLife*, 461 F.3d 660, 662 (6th Cir. 2006).

performing full-time sedentary work. *Id.* at 2347.

The District Court denied relief and the Plaintiff appealed to the Sixth Circuit Court of Appeals who reviewed the administrative under a deferential standard, taking into account the conflict of interest arising from MetLife's power to determine who was eligible for benefits and duty to pay for those same benefits. *Metropolitan Life*, 128 S. Ct. at 2347.

The Supreme Court affirmed the Court of Appeals, holding that "the fact that a plan administrator both evaluates claims for benefits and pays benefits claims creates the kind of 'conflict of interest'" referred to in *Firestone*. *Id*. at 2348. The Court further held that in such conflict of interest cases, courts should still review the administrator or fiduciary's decisions under the more deferential arbitrary and capricious standard, but should take into account the conflict when determining whether the administrator had abused its discretion. *Id*. at 2350. It declined adopting special procedural rules, reasoning that "[b]enefits decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts-which themselves vary in kind and in degree of seriousness-for us to come up with a one-size-fits-all procedural system that is likely to promote fair and accurate review." *Id.* at 2351.

Instead, conflicts continue to be one factor among many to be taken into account during judicial review. *Id.* In close cases, the conflict of interest might act as a "tiebreaker" depending on its case-specific importance. *Id.* According to the Court, where circumstances suggest a higher likelihood that the conflict affected the benefits decisions, such as a history of biased claims administration, the conflict should be weighted more heavily. *Id.* However, where administrators take care to reduce potential bias, the conflict will weight less heavily

11

in the determination. *Id.* Ultimately, the Court affirmed the Sixth Circuit Court of Appeals' decision to set aside MetLife's denial of benefits because it had properly engaged in a "combination-of-factors method of review." *Id.* at 2352.

After *Firestone*, the Third Circuit Court of Appeals adjusted the standard of review in benefits denial cases using a "sliding scale" that heightened the standard of review in cases where there was conflict of interest. *See Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 392 (3d Cir. 2000). In light of the Supreme Court's opinion in *MetLife*, the Court of Appeals reconsidered this "sliding scale" approach in *Estate of Kevin Schwing v. The Lilly Health Plan*, 562 F.3d 522 (3d Cir. 2009). The Court of Appeals held that the "sliding scale" approach is no longer valid and that

> "courts reviewing the decisions of ERISA plan administrators or fiduciaries in civil enforcement actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B) should apply a deferential abuse of discretion standard of review across the board and consider any conflict of interest as one of several factors in considering whether the administrator or fiduciary abused its discretion."

*Estate of Schwing*, 562 F.3d at 525. The court recognized that benefits decisions can arise in many varying contexts and, therefore, "the factors to be considered will be varied and case-specific." *Id.* at 526. Thus, reviewing courts in this Circuit are to weigh all of the competing context-specific considerations and determine whether the plan administrator or fiduciary acted in a manner that was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* at 527 (quoting *Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)).

As a preliminary matter, the issue before this Court will be reviewed under the arbitrary and capricious standard of review. The Plaintiff alleged in her Complaint, and

12

Defendant admitted in its Answer that "Defendant fiduciary has discretionary authority to determine the Plaintiff's eligibility for disability benefits under the policy and is also the entity responsible for paying benefits under the policy." Even though, as a matter of law under *Firestone* and *MetLife*, Defendant operates with an inherent conflict of interest, the decisions made by Lincoln will be reviewed under the more deferential standard. The LTD plan gives Lincoln, as a plan fiduciary, discretionary authority to determine eligibility for benefits and construe the terms of the LTD plan. Therefore, this Court must determine whether, taking into account all the factors including Lincoln's conflict of interest, Lincoln's decision was so arbitrary and capricious as to be unreasonable, unsupported by the evidence, or erroneous as a matter of law. Although there are certain factors that cut toward finding that the decision was an abuse of discretion, the facts and circumstances of this case weigh in favor of holding that Lincoln's decision was not arbitrary and capricious.

The first factor that weighs against Lincoln is the fact that Plaintiff received a favorable decision with the Social Security Administration. In the Social Security Disability case, the Defendant hired an attorney who argued that Plaintiff's condition rendered her unable to work and won a decision that Plaintiff was so disabled that she was "unable to perform any work existing in significant numbers in the national economy." Defendant deflected this potentially damaging evidence by explaining to Plaintiff that the Social Security Administration uses different criteria, regulation, and standards than Lincoln does when interpreting its contractual language. Although this explanation is not fully satisfactory and does not entirely erase the damage that the Social Security decision does to Lincoln's case, it certainly lessens the importance of this particular fact. It shows that Lincoln was aware of the decision and had undertaken some semblance of analysis on how that decision would

affect its denial of benefits under the LTD plan.

The second factor in this case that cuts against Lincoln is the fact that Lincoln paid such large amounts of money to the company responsible for its "independent" reviews of disability claims, and that it relied fairly heavily on these reports when making disability benefit eligibility determinations. However, like the first factor, there are mitigating circumstances that lessen the otherwise damaging effect. First, it is fairly common in the insurance industry for providers to refer their disability claims to independent experts who review the claim and make a determination. While it creates some conflict because these experts are paid by the insurance company, the insurance company is often the only party with the ability to pay for these reviews, which are in place to provide a third-party review of the claims so that the employee's applications for benefits are not exclusively reviewed by a completely conflicted party. Furthermore, Elite Physicians received compensation regardless of the conclusion reached in its reports, thereby removing the temptation to fraudulently suggest that an employee be denied benefits and lowering the possibility for any potential conflict in the review process.

Certainly, the conflict of interest innate to Lincoln's role as the arbiter of who receives benefits and the party responsible for paying out on any successful claims suggests a higher likelihood that its decisions will be arbitrary and capricious. However, in this case, none of the situations that would either heighten or lower the importance of this factor outlined in *MetLife* are present. Moreover, as will be discussed below, this is not a case where the conflict of interest criterion is a necessary tiebreaker. The factors weighing in favor of upholding Lincoln's denial are sufficiently strong that even with the conflict of interest weighing against Lincoln, this Court must uphold Lincoln's decision as being reasonable and

supported by the evidence.

First and foremost, the medical records strongly suggest that at the time benefits were cut-off, Ms. Magera was no longer totally disabled, as defined by the LTD plan. Dr. Ludivico's progress notes from March 24, 2006 makes it clear that the Plaintiff was getting restless and considering going back to work, and that, in his medical opinion, this would be a prudent and feasible course of action. There is nothing in the follow-up notes from the visits to Dr. Brown that are directly contradictory to this finding. Although, Plaintiff regularly complained of pain, she often reported feeling better with pain medication, and Dr. Brown usually noted that she was not in acute distress, advised her to keep "reasonably active," and that cervical range of motion existed without pain.

These records are particularly persuasive in favor of upholding Lincoln's determination when viewed in the context of the physical requirements of Plaintiff's job. Plaintiff's job required that she be sedentary the vast majority of the day, did not involve any heavy lifting, and allowed for changes in position as needed for comfort. When distinguished from the plaintiff's job in *MetLife*, which required a good amount of stooping, bending, and lifting with minimal sedentary time, the instant case is easily distinguishable. The conclusion that Ms. Magera could return to work in a sedentary position at the time her LTD benefits were discontinued is entirely reasonable and supported by the evidence, especially the doctor's reports suggesting that her symptoms were declining and that she herself felt ready to return to work.

This case is also distinguishable from *MetLife* on the medical condition at issue. The heart condition in *MetLife* was easily diagnosable and had concrete medical ramifications. FM and CFS, on the other hand, are characterized by their difficulty to diagnose, their

15

relatively unclear causes, and the vast difference in how these conditions affect various people.[4] Although it is true that nothing in Lincoln's literature requires any definitive objective diagnostic tests for there to be a finding of FM of CFS, these same materials also state that these conditions tend to dissipate over time, can be alleviated with therapy, and should require no more than a one-week absence for sedentary positions. Thus, it was reasonable for Lincoln to find that after well over one year of absence, Ms. Magera's symptoms had been become manageable and that she was no longer totally disabled from performing her sedentary occupation. It would be especially imprudent for a reviewing court to overturn an ERISA fiduciary's decision in case where the condition has fairly nebulous standards and characteristics. To do so would substitute the court's judgment for that of the fiduciary's, which is precisely what the arbitrary and capricious standard is meant to avoid.

Finally, the procedural handling of this case also suggests that this decision was not arbitrary or capricious. The Plaintiff was allowed two appeals with Lincoln. On the second, Lincoln sent the all of Ms. Magera's available medical records to its independent expert, Dr. Payne, who made his determination after a review of all the physical examinations that had been undertaken over the course of several years. Also, the Administrative Record suggests that Ms. Magera was kept sufficiently abreast of how the appeals and claims decisions were proceeding, and the reasoning for Lincoln's decision. Lincoln was careful to explicitly point out that it was not arguing with Ms. Magera's assertion that she was, in fact, suffering from

---

[4] The Third Circuit Court of Appeals has echoed Judge Posner's view on the elusiveness of FM, but noting that [t]he principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, . . . [which] are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch. *Post v. Hartford Ins. Co.*, 501 F.3d 154, 159 n.2 (3d Cir. 2007) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996)).

16

FM and CFS. Instead, it only suggested that Ms. Magera's conditions was no longer so severe that she could be considered totally disabled, as defined by the LTD plan and in light of its ongoing review of the medical records, and was able to return to a position that was akin to a telemarketer and almost entirely sedentary. This factor also weighs in favor of upholding Lincoln's decision.

## **CONCLUSION**

Considering all of the case-specific factors within the context of the Plaintiff, occupation, medical records and medical condition at issue, the Defendant's decision to deny Plaintiff Long-Term Disability Benefits was reasonable, supported by the evidence, and not erroneous as matter of law. Therefore, it was not arbitrary and capricious and must be upheld. Thus, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.  An appropriate Order follows.

November 16, 2009  /s/ A. Richard Caputo  
Date A. Richard Caputo  
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALISON T. MAGERA | CIVIL ACTION NO. 3:08-CV-565 |
| Plaintiff, | |
| v. | |
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | (JUDGE CAPUTO) |
| Defendant. | |

## **ORDER**

**NOW**, this 16th day of November, 2009, **IT IS HEREBY ORDERED** that:

(1) Defendant's Motion for Summary Judgment is **GRANTED**.

(2) Plaintiff's Motion for Summary Judgment is **DENIED**.

(3) **JUDGMENT IS ENTERED** in favor of Defendant.

(4) The Clerk of Court shall mark this case as **CLOSED**.

                                                           /s/ A. Richard Caputo  
                                                           A. Richard Caputo  
                                                           United States District Judge